NO. _____

In The

# United States Court of Appeals

For The Fourth Circuit

v.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE                                                    AT

_____

_____

Counsel for

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _25-1567_     Caption: _American Serleep, Inc. v. Purple Innovation, Inc._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_AMERICAN SERLEEP INC._
(name of party/amicus)

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?   ☑ YES ☐ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   Hongkong Kaysno Co., Ltd.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
   If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?               ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?               ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Tao Liu _____      Date: _____ June 5, 2025 _____

Counsel for: Appellant _____

Print to PDF for Filing

# TABLE OF CONTENTS

CORPORATION DISCLOSURE STATEMENT ...............................................I

JURISDICTIONAL STATEMENT ................................................... 1

    District Court Jurisdiction.................................................... 1

    Appellate Jurisdiction.......................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................. 1

STATEMENT OF THE CASE.......................................................... 2

    A. Nature of the Case, Course of Proceedings, and Disposition Below...... 2

    B. Statement of Facts ..................................................... 3

        1. Serleep Is a South Carolina Company Employing South Carolina Residents ............................................................ 3

        2. Purple's Deliberate and Extensive Commercial Contacts with South Carolina ............................................................ 4

        3. Purple's Targeted Enforcement Action Against Serleep ................. 5

        4. The District Court's Ruling............................................. 6

SUMMARY OF ARGUMENT .......................................................... 7

ARGUMENT ............................................................................ 9

    I. Standard of Review.......................................................... 9

    II. The District Court Erred in Dismissing for Lack of Personal Jurisdiction Because Purple's Conduct Established a Substantial Connection with South Carolina .............................................................. 10

        A. Purple Purposefully Availed Itself of the Forum by Cultivating and Serving the South Carolina Market...................................... 11

        B. Serleep's Claim Arises From and Relates to Purple's Forum-Directed Enforcement Activities.................................................... 13

        C. Exercising Jurisdiction Over Purple Is Constitutionally Reasonable ................................................................. 18

    III. In the Alternative, the District Court Abused Its Discretion by Denying Jurisdictional Discovery.................................................. 20

CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,

293 F.3d 707 (4th Cir. 2002) .................................................................11,12

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*

223 F.3d 1082 (9th Cir. 2000) ........................................................... 14

*Burger King Corp. v. Rudzewicz,*

471 U.S. 462 (1985)............................................................. 11,18

*Calder v. Jones,*

465 U.S. 783 (1984)........................................................ 5,8,13,14

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,*

334 F.3d 390 (4th Cir. 2003) ............................................. 9,10

*Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan,*

259 F.3d 209 (4th Cir. 2001) ............................................. 19

*Combs v. Bakker,*

886 F.2d 673 (4th Cir. 1989) ............................................. 9,22

*Consulting Eng'rs Corp. v. Geometric Ltd.,*

561 F.3d 273 (4th Cir. 2009) .......................................... 10,13,19

*ESAB Grp., Inc. v. Centricut, Inc.,*

126 F.3d 617 (4th Cir. 1997) .......................................... 4,10

*Fidrych v. Marriott Int'l, Inc.,*

952 F.3d 124 (4th Cir. 2020) ............................................................... 16

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*

141 S. Ct. 1017 (2021) ......................................................................... 16

*Grayson v. Anderson,*

816 F.3d 262 (4th Cir. 2016) .............................................................. 9,22

*Herbal Brands, Inc. v. Photoplaza, Inc.,*

72 F.4th 1085 (9th Cir. 2023) ............................................................. 8,18

*Impossible Foods Inc. v. Impossible X LLC,*

80 F.4th 1079 (9th Cir. 2023) ............................................................. 18

*International Shoe Co. v. Washington,*

326 U.S. 310 (1945) ............................................................................. 10

*Mylan Labs., Inc. v. Akzo, N.V.,*

2 F.3d 56 (4th Cir. 1993) ..................................................................... 9

*Oppenheimer Fund, Inc. v. Sanders,*

437 U.S. 340 (1978) ............................................................................. 21

*SnapPower, Inc. v. Lighting Def. Grp.,*

100 F.4th 1371 (Fed. Cir. 2024) ......................................................... 8,17

*Trimble Inc. v. Perdiemco LLC,*

997 F.3d 1147 (Fed. Cir. 2021) ........................................................... 14

*UMG Recordings, Inc. v. Kurbanov,*

963 F.3d 344 (4th Cir. 2020) ................................................................ 11,12

*U.S. ex rel. Vuyyuru v. Jadhav,*

555 F.3d 337 (4th Cir. 2009) ............................................................... 9

*Walden v. Fiore,*

571 U.S. 277 (2014) .............................................................................. 15,16

*World-Wide Volkswagen Corp. v. Woodson,*

444 U.S. 286 (1980) .............................................................................. 12

**Statutes**

15 U.S.C. § 1125(a) ............................................................................... 1

28 U.S.C. § 1291 ................................................................................... 1

28 U.S.C. § 1331 ................................................................................... 1

28 U.S.C. § 1338(a) ............................................................................... 1

28 U.S.C. § 2201 ................................................................................... 1

28 U.S.C. § 2202 ................................................................................... 1

**Rules**

Fed. R. App. P. 4(a)(1)(A) ..................................................................... 1

Fed. R. App. P. 4(a)(4)(A) ..................................................................... 1

Fed. R. Civ. P. 12(b) ............................................................................. 2

## JURISDICTIONAL STATEMENT

**District Court Jurisdiction**

The United States District Court for the District of South Carolina exercised subject-matter jurisdiction over this action pursuant to the Lanham Act, 15 U.S.C. § 1125(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. Plaintiff-Appellant American Serleep Inc. ("Serleep") sought a declaratory judgment of non-infringement of federal trademark rights asserted by Defendants-Appellees Purple Innovation, Inc. and Purple Innovation, LLC ("Purple"). (JA012-014). The district court's jurisdiction was founded on 28 U.S.C. § 1331 (federal question) and § 1338(a) (trademarks).

**Appellate Jurisdiction**

This Court possesses jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The district court entered its Order granting Purple's motion to dismiss for lack of personal jurisdiction on April 29, 2025. (JA146). A final, appealable Judgment dismissing the action without prejudice was entered on the docket on April 30, 2025. (JA151). This judgment disposed of all claims as to all parties.

Serleep filed a timely Notice of Appeal on May 19, 2025, which was within the 30-day period prescribed by Federal Rule of Appellate Procedure 4(a)(1)(A). (JA157). No post-judgment motion that would toll the time to appeal under Federal Rule of Appellate Procedure 4(a)(4)(A) was filed. This appeal is therefore timely and properly before this Court.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred in dismissing for lack of personal jurisdiction where an out-of-state defendant targets a South Carolina company with a trademark enforcement complaint to a national online marketplace, threatening the jobs of South Carolina residents and the state's economy, in a manner that constitutes a *de facto* injunction without judicial process.

2. Whether, in the alternative, the district court abused its discretion by dismissing the action without first permitting limited jurisdictional discovery to resolve factual disputes regarding the extent of Purple's forum contacts.

## STATEMENT OF THE CASE

**A. Nature of the Case, Course of Proceedings, and Disposition Below**

This is an action for a declaratory judgment of non-infringement arising from Appellee Purple's efforts to interfere with Appellant Serleep's lawful business by accusing its products of trademark infringement. Serleep, a South Carolina-based business, filed this action to obtain a judicial declaration that its products do not infringe any of Purple's asserted trademark rights, thereby resolving the uncertainty that threatened its commercial relationships and operations. (JA012-013).

Serleep commenced this action on January 13, 2025, in the United States District Court for the District of South Carolina. (JA005-015). On March 3, 2025, Purple moved to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for improper venue under Rule 12(b)(3). (JA034-048). Serleep filed its opposition on March 17, 2025 (later

2

corrected on March 20), arguing that Purple's extensive business activities in South Carolina and its targeted enforcement actions established specific personal jurisdiction. (JA056-084). In its opposition, Serleep also requested, in the alternative, an opportunity for limited jurisdictional discovery to ascertain the full extent of Purple's forum-related activities. Purple filed its reply on March 31, 2025. (JA130-145).

By an Order and Opinion dated April 29, 2025, the district court granted Purple's motion to dismiss for lack of personal jurisdiction. (JA145-155). The court concluded that Serleep had failed to demonstrate that its claim arose from Purple's contacts with South Carolina and declined to reach the venue argument. (JA153-155). The court's order did not address Serleep's alternative request for jurisdictional discovery. Final judgment was entered on April 30, 2025, dismissing the action without prejudice. (JA156). Serleep filed a timely Notice of Appeal on May 19, 2025. (JA157).

**B. Statement of Facts**

**1. Serleep Is a South Carolina Company Employing South Carolina Residents**

Appellant American Serleep Inc. is a South Carolina-based business. Although incorporated in Washington State, Serleep's principal office street address is in Gaffney, South Carolina. (JA086). From its Gaffney facility, Serleep operates a fulfillment warehouse and customer service hub, employing more than ten South Carolina residents. This South Carolina operation is central to Serleep's

3

business, serving as the nucleus for its nationwide distribution of home goods, including the SERSPER-brand mattresses at the center of this dispute. (JA008).

The economic health of Serleep, the livelihoods of its South Carolina employees, and its contributions to the state's tax base depend directly on the unimpeded sale of these products. A threat to Serleep's business is a direct threat to the economic well-being of its local employees and the community. Purple's complaint to The Home Depot, threatening the delisting of Serleep's products, created an immediate risk of lost sales, which would inevitably lead to layoffs of South Carolina workers and a reduction in tax revenue for the state. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997) (recognizing a state's "manifest interest in providing effective means of redress for its residents").

## 2. Purple's Deliberate and Extensive Commercial Contacts with South Carolina

Appellee Purple, a major competitor in the mattress and bedding market, has deliberately and systematically exploited the South Carolina market. Purple's business model is not one of passive or incidental contact with the state; it is an active and continuous commercial engagement.

First, Purple sells its products directly to consumers in South Carolina through its sophisticated, interactive e-commerce website. (JA060). This is not a static webpage but a fully functional online storefront where South Carolina

residents can browse products, place orders, provide payment information, and arrange for direct shipment to their homes within the state.

Second, and more significantly, Purple has established a vast physical retail presence throughout South Carolina. As of March 2025, Purple's own website advertised that its products were available for purchase in at least 131 brick-and-mortar retail stores across the state. (JA088). These authorized dealers are located in numerous cities, including Charleston, Columbia, and Greenville, demonstrating a comprehensive distribution strategy designed to saturate the South Carolina market. (JA059). By placing its goods into this extensive network, Purple has created ongoing business relationships with in-state retailers and availed itself of the state's consumer base and legal protections.

### 3.    Purple's Targeted Enforcement Action Against Serleep

The controversy giving rise to this action began when Purple initiated a targeted enforcement campaign to disrupt Serleep's business by lodging a trademark infringement complaint with The Home Depot, a national retailer that sells Serleep's SERSPER mattresses on its online marketplace. (JA018).

This enforcement action was aimed squarely at Serleep. By targeting a major national retailer, Purple's complaint was designed to have a nationwide effect, including cutting off sales to consumers in South Carolina. The foreseeable, and intended, result of this action was to inflict direct economic harm on Serleep at the heart of its operations in Gaffney, South Carolina. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

On July 24, 2024, The Home Depot forwarded Purple's infringement allegations to Serleep, directing Serleep to resolve the matter directly with Purple and warning of the potential delisting of its products if the issue was not resolved. (JA018). This created a direct and immediate threat to Serleep's business, prompting the filing of this declaratory judgment action.

While the motion to dismiss was pending in the district court, Purple filed its own mirror-image infringement lawsuit against Serleep in the U.S. District Court for the Middle District of Florida, underscoring the live, adversarial nature of the controversy. (JA056).

### 4. The District Court's Ruling

The district court granted Purple's motion to dismiss for lack of personal jurisdiction. (JA141). The court's analysis hinged on a critical, and erroneous, factual assumption: that Purple's only relevant contact was a single, out-of-state communication to The Home Depot that was not directed at South Carolina. The court reasoned that in a declaratory judgment action for non-infringement, the jurisdictional inquiry focuses on the defendant's enforcement activities. (JA153-154). It concluded that because Purple's enforcement letter was sent to The Home Depot, a non-resident, the action was not "directed towards residents of this forum." (JA153-154).

The court assumed for the sake of argument that Purple's e-commerce website and retail sales constituted purposeful availment but found that Serleep had "failed to draw a connection between Purple's contacts with the state and the

basis of the suit." (JA153, JA155). Based on this perceived lack of a nexus, the court held that exercising specific personal jurisdiction would be improper and dismissed the case without prejudice. (JA155). The court's order did not address Serleep's alternative request for jurisdictional discovery.

SUMMARY OF ARGUMENT

The district court's dismissal of Serleep's declaratory judgment action was premised on a clear error of law and a misunderstanding of the modern commercial landscape. Appellee Purple is subject to specific personal jurisdiction in South Carolina because it has purposefully availed itself of the forum through extensive commercial activities, and this action arises directly from Purple's intentional trademark enforcement campaign that was expressly aimed at Serleep's South Carolina-based business, threatening the livelihoods of South Carolina residents.

Purple's conduct readily satisfies this Court's three-prong test for specific jurisdiction. *First*, Purple purposefully availed itself of the privilege of conducting business in South Carolina. Its operation of a fully interactive e-commerce website and its establishment of a distribution network of over 131 brick-and-mortar retailers across the state demonstrate a deliberate effort to serve the South Carolina market.

Second, this dispute arises from and relates to Purple's forum-directed activities. The district court's contrary conclusion was based on the flawed premise that Purple's enforcement action was not directed at South Carolina. This

7

view ignores the realities of modern e-commerce, where a single complaint to a powerful online marketplace can function as a *de facto* injunction, causing immediate and widespread economic harm without judicial review. *See SnapPower, Inc. v. Lighting Def. Grp.*, 100 F.4th 1371, 1379 (Fed. Cir. 2024). Purple's cease-and-desist demand to The Home Depot was expressly aimed at causing economic injury to Serleep precisely where it would be felt most acutely: at its operational and financial center in South Carolina, threatening the jobs of its local workforce. This conduct squarely satisfies the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984). The district court's reliance on outdated jurisdictional precedents fails to account for the unique vulnerability of online businesses and the quasi-judicial power wielded by marketplaces. This Court should follow the lead of other circuits, like the Ninth, that have adapted jurisdictional analyses to these new business models. *See Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023).

Third, exercising jurisdiction over Purple is constitutionally reasonable. As a large, national corporation that already profits from the South Carolina market, Purple faces no undue burden in defending a suit there. Conversely, South Carolina has a profound interest in providing a forum for its resident businesses to resolve disputes that threaten their existence, and Serleep has a compelling interest in litigating in its home state.

Finally, even if this Court were to find the current record insufficient to establish jurisdiction, the district court abused its discretion by dismissing the

action without first allowing Serleep to conduct jurisdictional discovery. Serleep made a plausible showing of jurisdiction and explicitly requested discovery to uncover facts within Purple's exclusive control regarding the extent of its South Carolina business and its knowledge of Serleep's presence there. The district court's failure to grant this request, or even address it, was an abuse of discretion that prevented Serleep from fully making its case and warrants reversal.

ARGUMENT

## I.  Standard of Review

This Court reviews a district court's dismissal for lack of personal jurisdiction de novo. *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When, as here, the district court rules on jurisdictional issues based on the motion papers, affidavits, and discovery materials alone, the plaintiff need only make a *prima facie* showing of a sufficient jurisdictional basis. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). At this stage, the court must construe all disputed facts and draw all reasonable inferences from the proof in the plaintiff's favor. *Id*; *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

A district court's denial of jurisdictional discovery is reviewed for abuse of discretion. *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009). A court abuses its discretion when it denies a request for jurisdictional discovery despite the plaintiff making a threshold showing that jurisdiction might exist,

9

thereby preventing the plaintiff from developing a full factual record. *Carefirst*, 334 F.3d at 402-03.

## II. The District Court Erred in Dismissing for Lack of Personal Jurisdiction Because Purple's Conduct Established a Substantial Connection with South Carolina

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if (1) the exercise of jurisdiction is authorized by the long-arm statute of the forum state, and (2) the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Because South Carolina's long-arm statute has been interpreted to extend to the outer limits permitted by the Due Process Clause, the dual inquiries merge into one: whether the defendant has sufficient minimum contacts with South Carolina such that maintaining the suit does not offend "traditional notions of fair play and substantial justice." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

This Court applies a three-prong test to determine whether specific jurisdiction exists: "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims 'arise out of' those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally

10

'reasonable.'" *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002). The district court's analysis failed on all counts, resting on a flawed factual predicate and a misapplication of controlling precedent. When the record is viewed correctly, Serleep has more than satisfied its *prima facie* burden.

**A. Purple Purposefully Availed Itself of the Forum by Cultivating and Serving the South Carolina Market**

Purposeful availment is the "constitutional touchstone" of the minimum contacts analysis. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985). It ensures that a defendant will not be haled into a jurisdiction solely as a result of "random, fortuitous, or attenuated contacts." *Id*. at 475. A defendant purposefully avails itself of a forum by taking deliberate actions that create a "substantial connection" with that state, such that it should reasonably anticipate being brought into court there. *Id*. Purple's contacts with South Carolina are the antithesis of random or fortuitous; they are deliberate, systematic, and lucrative.

First, Purple operates a highly interactive, commercial website through which it transacts business directly with South Carolina residents. (JA060). Consumers in the state can browse, select, and purchase Purple's products, providing personal and financial information to complete transactions that result in goods being shipped directly into the forum. This is not a passive website that merely posts information. It is an active e-commerce platform that creates "a continuing, back-and-forth relationship" with customers in the state. *See UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352–53 (4th Cir. 2020) (adopting

11

the Zippo framework for analyzing website interactivity); ALS Scan, Inc., 293 F.3d at 714; *Epic Games, Inc. v. Person*, 593 F. Supp. 3d 233, 243 (E.D.N.C. 2022) (describing the Zippo framework adopted by the Fourth Circuit). This Court has recognized that such direct electronic business activity, when intentionally directed at a forum, supports the finding of purposeful availment. *See UMG Recordings,* 963 F.3d at 352-53.

Second, and most compellingly, Purple has established an extensive physical distribution network within South Carolina. By its own advertisement, Purple's products are sold through at least 131 brick-and-mortar retail stores across the state. (JA059, 088). This is not a case of a product merely ending up in the "stream of commerce." This is a case where the manufacturer has intentionally built the channels of that stream, creating ongoing relationships with dozens of in-state businesses to ensure its products reach South Carolina consumers. This conduct—establishing a statewide retail network—is a quintessential example of purposefully availing oneself of the privilege of conducting activities within a state. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (noting that jurisdiction is proper where a defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State").

The district court assumed this prong was met for the sake of its analysis, but the strength of Serleep's showing on this point is critical. (JA153). Purple's deep and continuous penetration of the South Carolina market establishes that it

has sought and received the benefits and protections of South Carolina's laws. Having done so, it cannot now claim surprise at being asked to answer for its conduct there, especially when that conduct involves an attempt to eliminate a competitor from the very market it has so carefully cultivated.

## B. Serleep's Claim Arises From and Relates to Purple's Forum-Directed Enforcement Activities

The second prong of the specific jurisdiction test requires that the plaintiff's claim "arise out of or relate to" the defendant's forum-directed activities. *Consulting Eng'rs Corp.*, 561 F.3d at 278. The district court's dismissal was based almost entirely on its erroneous conclusion that this prong was not met. (JA153-155). The court reasoned that in a declaratory judgment action for trademark non-infringement, the relevant conduct is the defendant's enforcement activity, which it found was not directed at South Carolina. *Id*. This conclusion collapses under the weight of the record and a proper application of the *Calder* effects test.

### 1. The District Court Erred by Misapplying the Calder Effects Test and Overlooking Evidence that Purple Expressly Aimed Its Tortious Conduct at South Carolina

Under the well-established "effects test" from Calder v. Jones, personal jurisdiction is proper over a defendant who commits an "(1) intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." 465 U.S. 783, 789-90 (1984). This test

is designed for situations where a defendant's out-of-state conduct has injurious effects within the forum. Purple's actions fit squarely within the *Calder* framework.

The intentional act is undisputed: Purple lodged a complaint with The Home Depot, a national retailer, alleging that Serleep's products infringed its trademark rights. (JA010, JA018). This was not an accident; it was a calculated legal maneuver designed to interfere with Serleep's business.

The act was expressly aimed at South Carolina. The district court mistakenly focused on the recipient of the email (The Home Depot, a non-resident) rather than the target of the action (Serleep, a South Carolina-based business). (JA010, JA018). This is a fundamental misapplication of the effects test. **The proper inquiry is not where the bullet was fired, but where it was intended to land**. *See Calder*, 465 U.S. at 789. Purple's demand was not about The Home Depot; it was about stopping the sale of Serleep's products. Purple knew or should have known that Serleep's principal operations were in South Carolina, making the state the "focal point" of its enforcement action. (JA056-063). By demanding that a national retailer delist Serleep's products, Purple intended to inflict harm on Serleep at the very center of its business operations in South Carolina. This is the essence of "express aiming." *See, e.g., Trimble Inc. v. Perdiemco LLC*, 997 F.3d 1147, 1156 (Fed. Cir. 2021) (finding that extensive cease-and-desist communications directed at a forum resident established jurisdiction); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087

14

(9th Cir. 2000) (holding that a letter sent to a third-party registrar in Virginia was "expressly aimed" at California because it targeted a known California resident).

Finally, Purple knew that the brunt of the harm would be suffered in South Carolina. The threatened delisting would directly impact Serleep's sales, revenue, and the employment of its South Carolina workforce—all harms centered in the forum state. (JA006, JA063). When a defendant's intentional tortious conduct is aimed at a known resident of a forum with the intent of causing economic injury, the defendant can reasonably anticipate being haled into court in that forum to answer for its actions. *Calder*, 465 U.S. at 790.

The district court's failure to recognize this was clear error. It fixated on the physical location of the intermediary, The Home Depot, and ignored the undisputed reality that the entire purpose of the communication was to affect the business of a South Carolina company in its primary place of business.

### 2. Purple's Conduct Is Distinguishable from *Walden v. Fiore* Because Its Commercial and Enforcement Activities Together Connect It to the Forum Itself

The district court's heavy reliance on *Walden v. Fiore*, 571 U.S. 277 (2014), was misplaced. (JA154). *Walden* clarified that for jurisdiction to be proper, the defendant's own conduct must create the connection with the forum state, not the plaintiff's unilateral activity or connections. *Id*. at 284. The defendant in *Walden*, a DEA agent in Georgia, had absolutely no contact with the forum state of Nevada;

his only connection was to the plaintiffs who happened to live there. *Id*. at 288-89.

This case is fundamentally different. Purple is not a stranger to South Carolina. As established above, Purple has created its own substantial and continuous contacts with the forum state through its extensive e-commerce and retail sales operations.. Its enforcement action against Serleep was not an isolated event affecting a plaintiff with a coincidental connection to the forum. Instead, it was an action aimed at a competitor within the very market that Purple itself had purposefully entered and cultivated. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141–42 (4th Cir. 2020) (distinguishing *Walden* where defendant had other forum contacts).

This critical distinction was recently illuminated by the Supreme Court in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021). The Court explained that the "arise out of or relate to" standard is disjunctive, and the "relate to" prong contemplates jurisdiction even without a strict causal link, so long as there is a strong "affiliation between the forum and the underlying controversy." *Id*. at 1026. Here, that affiliation is undeniable. Purple's business in South Carolina (selling its own mattresses) is directly related to the controversy (its attempt to stop a competitor from selling mattresses in the same market). Purple's enforcement action was an extension of its business strategy in the forum. This intertwining of Purple's commercial contacts and its enforcement contacts creates the "substantial connection with the forum State"

16

that was absent in *Walden*. The district court erred by failing to appreciate this crucial distinction.

### 3. The District Court's Analysis Fails to Account for the Realities of Modern E-Commerce and the Power of Online Marketplaces

The district court's jurisdictional analysis is grounded in a business paradigm that is rapidly becoming obsolete. In the modern digital economy, online marketplaces like Amazon and HomeDepot.com are not mere passive platforms; they are powerful gatekeepers of commerce. For countless businesses like Serleep, access to these marketplaces is the lifeblood of their operations. When a competitor like Purple sends a takedown notice to such a marketplace, it is not merely sending a letter; it is wielding the marketplace's power to impose what amounts to a *de facto* private injunction, shutting down a competitor's sales channel instantly and without any judicial oversight. *See SnapPower, Inc. v. Lighting Def. Grp.*, 100 F.4th 1371, 1379 (Fed. Cir. 2024) (recognizing that using Amazon's extra-judicial enforcement mechanism to delist a competitor's product constitutes purposeful direction).

This new commercial reality demands a corresponding evolution in jurisdictional jurisprudence. Courts can no longer view an enforcement letter to a third-party marketplace as an indirect action with only attenuated effects in the plaintiff's home forum. The action is direct, the effect is immediate, and the harm is precisely targeted. The Ninth Circuit has begun to grapple with these issues, recognizing that a defendant who sells products via an interactive website and

17

causes them to be delivered to the forum has purposefully directed its conduct there. *See Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023). In *Herbal Brands*, the court found jurisdiction proper over defendants who sold infringing products into the forum state through Amazon, noting that the defendants exercised control over the distribution and that their cease-and-desist letters confirmed they knew the harm was occurring in the plaintiff's home state.

Here, Purple's complaint to Home Depot was a modern-day equivalent of physically entering South Carolina to disrupt Serleep's business. It was an intentional act designed to leverage the power of a national marketplace to inflict localized economic pain on a competitor. To hold that such conduct does not create jurisdiction in the state where the targeted business resides and where its employees face layoffs would be to ignore the fundamental shift in how business is conducted and how commercial torts are now committed. This Court should recognize this new reality and hold that purposefully using an online marketplace to de-list a competitor's products creates jurisdiction where the economic injury is foreseeably and intentionally felt. *See Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1093–94 (9th Cir. 2023).

## C. Exercising Jurisdiction Over Purple Is Constitutionally Reasonable

Once a plaintiff makes a prima facie showing of purposeful availment and relatedness, the burden shifts to the defendant to present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477. Purple has not and cannot meet this

18

heavy burden. An analysis of the five factors for constitutional reasonableness demonstrates that exercising jurisdiction in South Carolina is entirely fair. *See id.* at 476-77; *See Consulting Eng'rs Corp.*, 561 F.3d at 279.

**The Burden on the Defendant**: The burden on Purple to defend this suit in South Carolina is minimal. Purple is a sophisticated, national corporation that already conducts substantial business in the state and ships its products there. (JA059-061). With modern communication and travel, the burden of litigating in an adjacent state where it maintains a significant market presence is negligible.

**The Forum State's Interest**: South Carolina has a paramount interest in adjudicating this dispute. It has a strong sovereign interest in providing a convenient forum for its resident businesses to seek redress for tortious conduct that threatens their economic viability. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984); *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001). This interest is magnified here, where Purple's actions directly threaten the jobs of more than ten South Carolina residents and the tax revenue Serleep contributes to the state's economy. Protecting local employers and the state's economic base from out-of-state interference is a core function of the state's judicial system.

**The Plaintiff's Interest in Obtaining Relief**: Serleep's interest in litigating in its home forum is substantial. Its principal operations, business records, and witnesses to the economic harm are all located in South Carolina.

Forcing a smaller, local business to litigate in a distant forum like Utah or Florida would impose a significant financial and logistical hardship.

**The Interstate Judicial System's Interest in Efficient Resolution**: Adjudicating the case in South Carolina is the most efficient option. The evidence related to the harm suffered by Serleep is located there, as well as the alleged infringing evidence. Resolving the dispute in the forum where the injury is centered avoids piecemeal litigation and promotes a swift and effective resolution.

**The Shared Interest of the States in Furthering Social Policies**: Federal trademark law represents a shared social policy of promoting fair competition. South Carolina courts are fully capable of applying federal law to balance the rights of trademark holders with the rights of competitors to engage in lawful business, thereby protecting the integrity of the marketplace.

All five factors weigh heavily in favor of exercising jurisdiction in South Carolina. Purple has offered no compelling reason why it would be unfair to require it to answer for its conduct in a state where it actively profits and where its actions have caused direct harm to a local business.

## III. In the Alternative, the District Court Abused Its Discretion by Denying Jurisdictional Discovery

Even if this Court concludes that Serleep's prima facie showing was insufficient on the current record, the district court's outright dismissal was premature and constituted an abuse of discretion. A court should not dismiss for lack of personal jurisdiction without first permitting jurisdictional discovery

20

where a plaintiff has made a plausible claim that jurisdiction exists and needs discovery to prove it. *Carefirst*, 334 F.3d at 402-03. A district court's denial of such discovery is reviewed for abuse of discretion. *Id*.

Here, Serleep made more than a plausible claim; it made a strong *prima facie* showing of jurisdiction based on Purple's extensive commercial activities in South Carolina and its targeted enforcement action. In its opposition to the motion to dismiss, Serleep explicitly requested that, should the court harbor any doubts, it be granted an opportunity for limited jurisdictional discovery to develop the factual record further. (JA057, JA068). The district court abused its discretion by ignoring this request and dismissing the case.

Jurisdictional discovery is appropriate where facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). That is precisely the situation here. Serleep alleged that Purple has a massive retail presence in South Carolina (131 stores) and a fully interactive e-commerce site through which it derives substantial revenue from the state. Purple responded with a conclusory declaration from its CFO, denying that it "purposefully directed" business activities toward South Carolina or was aware of Serleep's presence there. These competing claims create a clear factual dispute over the nature and extent of Purple's forum contacts—a dispute that discovery is designed to resolve.

Serleep specifically identified the information it sought, which was entirely within Purple's control: data on its South Carolina sales volume and revenue, the

nature of its agreements with its 131 in-state retailers, its marketing and advertising expenditures in the state, and any internal communications revealing its knowledge of Serleep's South Carolina operations when it launched its enforcement action. Denying Serleep the chance to uncover these essential facts was an abuse of discretion, particularly when it had already made a substantial showing of jurisdiction. *See Combs*, 886 F.2d at 676; *Grayson*, 816 F.3d at 268. The district court's failure to even address the discovery request, let alone provide a reason for its denial, compounds the error.

## CONCLUSION

This case sits at the intersection of established jurisdictional principles and the new realities of e-commerce. The district court's decision, rooted in an outdated view of business, fails to protect a South Carolina company from targeted, out-of-state conduct designed to inflict economic harm within this forum. Purple purposefully availed itself of the South Carolina market and then aimed its enforcement activities at a known competitor within that market, causing foreseeable injury to Serleep, its South Carolina employees, and the state's economy. This Court should reverse the dismissal and recognize that such conduct falls squarely within the bounds of specific jurisdiction. Doing so would not only correct the error below but also provide crucial guidance on how due process applies in the digital age, ensuring that online marketplaces cannot be used as tools to inflict injury with impunity.

For the foregoing reasons, Plaintiff-Appellant American Serleep Inc. respectfully requests that this Court reverse the district court's order of dismissal and remand the case for further proceedings on the merits. In the alternative, should this Court find the current record insufficient, Serleep requests that the Court vacate the dismissal and remand with instructions to permit limited jurisdictional discovery.

Respectfully submitted,


Tao Liu

Glacier Law LLP

41 Madison Avenue, Suite 2529

New York, NY 10010

(212) 729-5054

Tao.liu@glacier.law

***Counsel for Plaintiff-Appellant***

***American Serleep Inc.***

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. ___–_____    Caption: _____

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ ]    this brief or other document contains _____ [*state number of*] words

[ ]    this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[ ]    this brief or other document has been prepared in a proportionally spaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*];

**or**

[ ]    this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s)_____

Party Name_____    Date:_____

12/09/2024 NA/MEO